## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **SUSAN ENDL et al,** | Civ. No. 2:12-3564 |
| **Plaintiff,** | (KM)(MAH) |
| **v.** | |
| **STATE OF NEW JERSEY et al,** | **MEMORANDUM OPINION** |
| **Defendants.** | |

### KEVIN MCNULTY, U.S.D.J.:

This matter comes before the Court on motions to dismiss the Second Amended Complaint ("SAC") brought by Defendants State of New Jersey, New Jersey Department of Corrections, Northern State Prison, Gary M. Lanigan, George Hayman, and Paul Lagana (collectively, "Corrections Defendants") (Docket No. 34), and by the University of Medicine & Dentistry of New Jersey, John Godinsky, M.D., Sharmalie Perera, M.D., Veronica Nendze, R.N., Maria Delgado, R.N., Theresa Jocen Boblick, L.P.N., Bernice Picerno-Jones, R.N., David Maxey, PhD, Alan Kay M.D., and Anasuya Salem, M.D. (collectively, "Medical Defendants") (Docket Nos. 35, 48).[1] For the reasons set forth below, these motions are **GRANTED** in part and **DENIED** in part.

### I.     BACKGROUND

This action arises out of the death of Eli Endl, which occurred when he was an inmate of Northern State Prison. Plaintiffs, Mr. Endl's survivors, bring the action against the State of New Jersey, the New Jersey Department of

---

[1]     As to Docket No. 35, the Notice of Motion and Proposed Order list only the University, and the accompanying Brief lists only the individual medical providers. I will assume that this motion is intended to be asserted on behalf of all the Medical Defendants.

The oppositions and replies submitted by the Plaintiffs' attorney, Fred M. Zemel, and Medical Defendants' attorney, David C. Donohue, are not consistently clear as to which motions and/or Parties they address. I have considered all of the arguments raised as they apply to all Parties.

Corrections, the University of Medicine & Dentistry of New Jersey, and affiliated medical personnel. They allege that Defendants' collective failure to provide adequate medical care caused the death of Eli Endl. The Second Amended Complaint ("SAC") asserts constitutional claims pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), as well as state law claims under the New Jersey Tort Claims Act ("TCA").

For purposes of these motions only, I assume the truth of the following facts, which are taken from the SAC. At this procedural stage, however, they have the status of allegations, and have not been tested by any fact finder.

Eli Endl, now deceased, was an inmate at Northern State Prison in Newark, Essex County, New Jersey. SAC ¶ 1. Plaintiffs, Susan and Anthony Endl, are the natural parents of Eli Endl. *Id.* ¶ 2. Susan Endl is the designated administrator *ad prosequendum* for the benefit of Eli Endl's estate. *Id.* ¶ 3.

Defendant New Jersey Department of Corrections ("DOC") is a subdivision of Defendant State of New Jersey ("New Jersey"). DOC operates Northern State Prison. *Id.* ¶¶ 4-6. Defendant Gary M. Lanigan is the Commissioner of the DOC. *Id.* ¶ 8. Defendant George Hayman is the former Commissioner of the DOC. *Id.* ¶ 9. Defendant Paul Lagana is the Administrator of Northern State Prison. *Id.* ¶ 10. These three individuals are sued in their official capacities. Collectively these Defendants are referred to as the "Corrections Defendants."[2]

Defendant University of Medicine and Dentistry of New Jersey ("UMDNJ") is a state university contracted by New Jersey to provide medical care and attention, and health and hospital services, to inmates housed at Northern State Prison. *Id.* ¶ 7. Defendants John Godinsky, M.D., Sharmalie Perera, M.D., Veronica Nendze, R.N., Maria Delgado, R.N., Theresa Jocen Boblick, L.P.N. Defendants Bernice Picerno-Jones, R.N., David Maxey PhD, Alan Kay, M.D., and Anusuya Salem, M.D. are current or former employees of UMDNJ, DOC, or Northern State Prison who provided medical care and attention to

---

[2]    The SAC also names John Does 1 – 10, who are identified only as employees of the DOC "charged with the responsibility for the housing, care and detention of inmates at Northern State prison." *Id.* 11. Plaintiffs allege that John Does 1 – 10 would have been responsible for communicating with Eli Endl so that if he complained about a medical problem, they would ensure he received appropriate medical care and attention, including making sure he was attended to by an appropriate medical care provider. *Id.* ¶ 13.

inmates at the prison, including Eli Endl. *Id.* ¶¶ 15-18. Collectively, these Defendants are referred to as the "Medical Defendants."[3]

Between approximately March 21, 2010, and March 25, 2010, Eli Endl became ill and required medical care. *Id.* ¶¶ 21-23. At 9:20 pm on March 21, 2010, Bernice Picerno-Jones, R.N., documented that Endl complained of chest cavity pain from his shoulders past his abdomen. *Id.* ¶ 23. She reported that he had been given 650 mg of Tylenol at 9:00 pm, but allegedly no medical workup followed. *Id.* On March 22, 2010, Endl required medical attention for a complaint of bil[ateral] flank pain, tenderness, and chest pain. *Id.* ¶22. On March 24, 2010, Endl had an office visit for blood in sputum, excessive sputum, cough, wheezing, and "bronchitis-c/o cough with excessive sputum and blood." *Id.* At 8:56 pm the same day, Endl was found unresponsive in his cell by a corrections officer. *Id.* Endl died on March 25, 2010. *Id.* ¶ 26.

Plaintiffs allege that Defendants denied or deprived Endl of "proper and necessary medical care and attention" by:

1. Failing to provide a medical workup following Endl's documented March 21, 2010 complaint of chest cavity pain;
2. Misdiagnosing bronchitis when Endl suffered from congestive heart failure;
3. Misdiagnosing kidney stone-related pain and respiratory infection;
4. Failing to diagnose potential aortic dissection;
5. Failing to diagnose Marfanoid symptoms;
6. Failing to timely treat a dissecting aortic aneurysm;
7. Failing to address prior diagnoses of schizophrenia and mood disorder;
8. Failing to properly diagnose several pain symptoms; and
9. Failing to insure that Endl was properly medicated.

*Id.* ¶ 23. Plaintiffs allege that the care Endl did receive was provided "carelessly, recklessly and negligently." *Id.* ¶ 24. They further allege that as a "direct and proximate result" of Defendants' refusal to provide the required medical care attention, Endl sustained substantial pain and suffering, and died. *Id.* ¶¶ 25, 26.

---

[3]    The SAC also names John Does 11 – 20, who are medical, nursing, and/or health care providers identified as "employees, agents, and/or representatives of Defendant UMDNJ and/or [DOC]." *Id.* ¶ 20.

Plaintiffs Susan Endl (individually and as administrator *ad prosequendum* of the Estate of Eli Endl), Anthony Endl, and Eli Endl (deceased), bring this complaint against the Defendants alleging 10 counts: deliberate indifference to serious medical needs (Count 1), cruel and unusual punishment (Count 2), deprivation of life, liberty, and the pursuit of happiness (Count 3), and a separate "Monell claim" (Count 4) pursuant to 42 U.S.C. § 1983; deprivation of right to life, liberty, and the pursuit of happiness (Count 5) and cruel and unusual punishment (Count 6) under the New Jersey Constitution; and state-law claims of negligence and/or medical malpractice (Count 7), intentional infliction of emotional distress[4] (Count 8), wrongful death (Count 9), and the New Jersey Survivorship Statute (Count 10).[5] SAC ¶¶ 28-65.

The original complaint was filed on March 21, 2012, in New Jersey Superior Court, Essex County; removed to this district court on June 13, 2012; and assigned to Hon. William J. Martini. (Docket No. 1). The Corrections Defendants moved to dismiss the initial complaint on June 20, 2012 (Docket No. 4), but that motion, overtaken by procedural developments, was not decided. The case was reassigned to me on August 1, 2012, and the First Amended Complaint was filed the same day. (Docket Nos. 9, 10). UMDNJ filed an Answer to the First Amended Complaint on August 14, 2012. (Docket No. 13). Less than a month later, on September 10, 2012, the Plaintiffs moved to amend the complaint a second time. (Docket No. 14). Magistrate Judge Mark Falk granted the motion to amend and terminated the pending motion to dismiss the earlier complaint. (Docket No. 19). Plaintiffs filed the SAC on November 26, 2012. (Docket No. 20).

None of the Defendants has filed an Answer to the SAC. The Corrections Defendants moved to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(6) on December 10, 2012. (Docket No. 34). The Medical Defendants also moved to dismiss the SAC on December 18, 2012. (Docket No. 35). On April 11, 2013, the Medical Defendants made a second motion to dismiss the SAC pursuant to

---

[4]    This count, titled "Outrage," probably refers to the tort of intentional infliction of emotional distress ("IIED"), which requires that the defendant's conduct be "extreme and outrageous." *Buckley v. Trenton Saving Fund Soc.*, 544 A.2d 857, 863 (N.J. 1988); SAC ¶¶ 57-58. This tort requires that the defendant intend both the act and the production of emotional distress. *Id.*

[5]    Count 10 is pleaded separately under the survivorship statute, N.J.S.A. 2A:15-3 (Count 10). The survivorship statute does not create a separate basis for relief, but provides that an administrator or executor of an estate may bring an action on behalf of the intestate or testator. *Id.*

Rule 12(b)(6) based on Plaintiff's failure to comply with the state-law requirement of an affidavit of merit. (Docket No. 48).

## II.   DISCUSSION

Defendants move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Finding that the Correction Defendants' motion and the SAC also raise issues of sovereign immunity and standing, I also consider the SAC's viability pursuant to Fed. R. Civ. P. 12(b)(1). *See* Corr. Def. Br. at 8.

### A. Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

The Court's subject-matter jurisdiction is considered pursuant to Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) challenges may be either facial or factual attacks. See 2 MOORE'S FEDERAL PRACTICE § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438. A factual challenge, however, attacks subject-matter jurisdiction by challenging the truth (or completeness) of the jurisdictional allegations set forth in the complaint. *Mortensen*, 549 F.2d at 891. Thus a factual jurisdictional challenge may not go forward unless and until the plaintiff's allegations have been controverted. *Id.* at 891 n. 17. For purposes of this motion to dismiss, the Defendants' jurisdictional arguments are treated as facial attacks.

### 1. Standing

This action is brought by Eli Endl's parents, Susan and Anthony Endl, and in Eli Endl's name. The Plaintiffs' standing has not been raised by the Parties. Nevertheless, because it potentially implicates the Court's subject matter jurisdiction, I briefly discuss it here. *Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007); *Coastal Outdoor Advertising Group, LLC v. Twp. of Union N.J.*, 676 F. Supp. 2d 337, 343 (D.N.J. 2009).

Plaintiffs generally may not vindicate the rights of others. *McCain v. Abraham*, 337 Fed. App'x 141, 142 (3d Cir. 2009). Nevertheless, a plaintiff who acts in a representative capacity may assert claims of the deceased under Section 1983. Such a Section 1983 cause of action will survive the complainant's death if it would do so under state law. *See Robertson v. Wegmann*, 436 U.S. 584, 593 (1978); *Giles v. Campbell*, 698 F.3d 153, 156 (3d Cir. 2012). Under New Jersey law, an executor or administrator may pursue an action based on "the wrongful act, neglect, or default of another, where death resulted from injuries for which the deceased would have had a cause of action if he lived." N.J.S.A. 2A:15-3. More specifically, a wrongful death action for damages will be available when "the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury." N.J.S.A. 2A:31-1. An action under this statute must be brought in the name of an administrator ad prosequendum of the decedent. N.J.S.A. 2A:31-2. An action under either statute must be commenced within two years after the death of the decedent. N.J.S.A. 2A:15-3; 2A:31-3.

This action was originally filed on March 21, 2012, within two years after the death of Eli Endl. Eli Endl's mother, Susan Endl, as administrator ad prosequendum, is entitled to bring claims based on the wrongful death of Eli Endl. There does not, however, appear to be any basis for Anthony Endl's standing as plaintiff under New Jersey state law. Under the New Jersey Survivorship and Wrongful Death statutes, the class of persons entitled to sue is restricted to the administrator ad prosequendum or executor. N.J.S.A. 2A:31-2; 2A:15-3. Section 1983 incorporates these state law limitations on representative capacity. All of the claims in this action are asserted on behalf of the deceased, Eli Endl. I will therefore dismiss Anthony Endl (who sues as an individual) and Susan Endl (in her individual capacity) as plaintiffs. This action will go forward with Susan Endl, administrator ad prosequendum, as plaintiff. No change to the substance of the action is intended or should be inferred.

## 2. Sovereign Immunity

Among the Defendants named in the SAC are the State of New Jersey and certain entities that do or may share the State's Eleventh Amendment protection. To the extent that those parties are protected by sovereign immunity, the claims against them will be dismissed.

The Eleventh Amendment to the Constitution guarantees the states' immunity from certain claims: "The Judicial power of the United States shall

not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Despite the limited scope of its wording, the Eleventh Amendment has for over a century been held to incorporate a more general principle of sovereign immunity that bars citizens from bringing suits for damages against any state in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-101 (1984); *Kelley v. Edison Twp.*, No. 03–4817, 2006 WL 1084217, at *6 (D.N.J. Apr. 25, 2006) (citing *Bennett v. City of Atl. City*, 288 F. Supp. 2d 675, 679 (D.N.J. 2003)); *see also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Hans v. Louisiana*, 134 U.S. 1 (1890).

Monetary claims for deprivations of civil liberties under 42 U.S.C. § 1983 are subject to that sovereign immunity bar. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989). Section 1983 provides:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983 (emphasis added). A state is not considered a "person" for purposes of Section 1983 because it is protected by sovereign immunity. *Will*, 491 U.S. at 67-70.

In Section 1983 actions, the protection of the Eleventh Amendment extends to arms of a state—including agencies, departments, and officials—when the state is the real party in interest. *See Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d. Cir. 2002). To determine whether a defendant is an arm of the state, the Court considers three factors: (1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy. *See Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir.1989) (en banc).

The same sovereign immunity reasoning has been applied to claims for damages against the state and its entities pursuant to the NJCRA. *Szemple v. Corr. Med. Servs.*, 493 Fed. App'x 238, 241 (3d Cir. 2012); *Stroby v. Egg Harbor Twp.*, 754 F. Supp.2d 716, 721 n. 5 (D.N.J. 2010) (quoting *Chapman v. State of New Jersey*, Civ. A. No. 08–4130, 2009 U.S. Dist. LEXIS 75720, at *7, 2009 WL 2634888 (Aug. 25, 2009)). NJCRA is construed nearly identically to Section 1983. In particular, the definitions of "person" under the two statutes have been interpreted in parallel. *Didiano v. Balicki*, 488 Fed. App'x 634, 638 (3d Cir. 2012) (explaining that "person" as defined in the New Jersey Code does not encompass the state or its functional equivalents).

### a. Corrections Defendants

Defendants New Jersey, the DOC, and the named Corrections Officers (who are sued in their official capacities) are immune from suit under Section 1983 and the NJCRA (Counts 1-6 of the SAC).

The DOC is considered an "arm of the state" because it enjoys minimal autonomy. DOC operates under a Commissioner appointed by the Governor with the consent of the Senate. *Grabow v. Southern State Corr. Facility*, 726 F. Supp. 537, 539 (D.N.J. 1989); *Simrin v. Corr. Med. Servs.*, Civ. No. 05-2223 (RBK), 2006 WL 469677 *2 (Feb. 24, 2006) (dismissing claims against NJ DOC pursuant to Eleventh Amendment and Section 1983); *Didiano*, 488 Fed. App'x at 638-39 (affirming grant of summary judgment on Section 1983 and NJCRA claims in favor of DOC and DOC official sued in official capacity). DOC therefore stands in the shoes of New Jersey for sovereign immunity purposes. The motion to dismiss Counts 1-6 will be granted as to the State and DOC.[6]

---

[6]    The "Monell" theory of liability in Count 4 does not circumvent the sovereign immunity bar. Under Section 1983, a municipality is a "person" subject to suit, but its liability cannot be vicarious; that is, it will not be held liable via *respondeat superior* for the acts of municipal employees. A municipality may, however, be liable to the extent that *its own* policies and practices led to a deprivation of constitutional rights. *See Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658 (1978) (local government units are "persons" for purposes of Section 1983 and can be held liable when a constitutional deprivation arises from a governmental custom or policy). Count 4, invoking *Monell,* alleges that the DOC "maintained policies, practices and customs with regard to the operation of Northern State Prison" that failed to provide reasonable and adequate care to inmates at the prison. SAC ¶ 40. As established above, however, the premise for *Monell* liability is lacking: DOC is not a "person" whose acts will

Similarly, the Section 1983/NJCRA claims against Defendants Lanigan, Hayman, and Lagana, brought against them in their official capacities, must fail. SAC ¶¶ 8-10 (specifically naming each of these Defendants in his official capacity). Under *Will,* "a suit against a state official in his or her *official* capacity is not a suit against the official but rather is a suit against the official's office." 491 U.S. at 71 (citing *Brandon v. Holt,* 469 U.S. 464, 471 (1985)); *Hafer v. Melo,* 502 U.S. 21, 25 (1991). Such a suit is thus no different from a suit against the State itself. *Id.* (citing *Kentucky v. Graham,* 473 U.S. 159, 165-166 (1985)); *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 690 (1978). None of the Corrections Defendants, sued in their official capacities, are "persons" subject to suit under Section 1983 or the NJCRA. Counts 1-6 of the SAC are thus barred by sovereign immunity as against the Corrections Defendants, and must be dismissed pursuant to Rule 12(b)(1).

Finally, I consider the New Jersey Tort Claims Act (TCA), which underlies Counts 7-10 of the SAC. Under the TCA, public entities are generally immune from liability for an injury arising out of an act or omission of the public entity, a public employee, or any other person. N.J.S.A. 59:2-1; *Greenway Dev. Co., Inc. v. Borough of Paramus,* 163 N.J. 546, 552, 750 A.2d 764 (2000). A public entity is also not liable under a vicarious liability theory for a public employee's willful misconduct, crime, fraud, or malice. N.J.S.A. 59:2-10. I will therefore dismiss Counts 7-10 as against New Jersey and the DOC.

I turn to the individual Defendants' potential immunity from suit under the TCA. A public employee may generally share the State's immunity, but is not shielded from claims based on the employee's willful misconduct. N.J.S.A. 59:3-14 ("Nothing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct."). Plaintiff's negligence/malpractice claim in Count 7 does not allege willful misconduct in so many words, but it could encompass such conduct; within its scope are not just errors in medical judgment, but claims of deliberate or reckless indifference. At any rate, the IIED claim (Count 8) and wrongful death claim (Count 9) more clearly allege conduct that may lie outside the scope of these officers' employment or that may constitute willful misconduct. *See* N.J.S.A. 59:3-14; *Clarke v. Twp. of Mt. Laurel,* 815 A.2d 502, 507-08 (N.J. Super. App. Div. 2003) (reversing entry of summary judgment in wrongful

subject it to a Section 1983 claim. Therefore, this "Monell" style claim, like the others in Counts 1-6, is barred and will be dismissed for this additional reason.

death action in favor of police officer defendant where officer may have engaged in willful misconduct). Counts 7-10, then, will not be dismissed at this stage.

Accordingly, the SAC is dismissed in its entirety against New Jersey and the DOC, and Counts 1-6 are dismissed as to Defendants Lanigan, Hayman, and Lagana, pursuant to Rule 12(b)(1).

### b.  UMDNJ & Individual Medical Defendants

#### (i.)    UMDNJ

As to Defendant UMDNJ, sovereign immunity from suit under Section 1983 is less certain. Whether UMDNJ qualifies as a state entity for purposes of Section 1983 is an unsettled question. The Third Circuit has implied that a Section 1983 action can be maintained against UMDNJ. *See Mauriello v. University of Medicine & Dentistry,* 781 F.2d 46 (3d Cir. 1986). *See also Fuchilla v. Layman,* 537 A.2d 652, 655-57 (N.J. 1988) (citing *Mauriello* and holding that UMDNJ was not alter ego of the state). More recently, however, courts in this district have disagreed as to UMDNJ's proper status. *See e.g. Simmons v. New Jersey,* No. 09–1067 (JAP), 2009 WL 3260602, at *5, n. 5 (D.N.J. Oct. 8, 2009) (assuming, for purposes of motion to dismiss, that prison doctor and UMDNJ are "state actors" subject to suit under Section 1983); *Green v. Corzine,* No. 09-1600 (AET), 2010 WL 1133445, at *7 (D.N.J. Mar. 22, 2010) (concluding that "UMDNJ is an instrumentality of the state" protected by the Eleventh Amendment); *Overton v. Shrager,* No. 09-6299 (MLC), 2011 WL 2937363 *5 (D.N.J. July 19, 2011) (acknowledging conflicting authority).

*Fuchilla* held that UMDNJ's relative autonomy and blend of public and private funding, along with other factors, dictated the conclusion that UMDNJ was not the alter ego of the state. The issue potentially remains open, however, because *Fuchilla* predated the en banc Third Circuit's definitive formulation of the controlling three-part test of *Fitchik, see* p. 7, *supra. Fuchilla,* in 1988, discussed the functional autonomy as well as the financial independence of UMDNJ. 537 A.2d 652 at 655. In doing so, it was applying pre-*Fitchik* law, specifically, *Urbano v. Bd. of Managers of N.J. State Prison,* 415 F.2d 247, 250-51 (3d Cir. 1969).[7] Nevertheless, the New Jersey Supreme Court's analysis in

---

[7]      *Urbano* contained more complex criteria for determining the alter ego issue. In addition to autonomy and financial independence, the factors to be considered included local law defining the status and nature of the agency, whether the agency was performing a governmental or proprietary function, whether it was separately

*Fuchilla* is far from irrelevant; it provides a detailed description of UMDNJ's status, and is instructive here. Indeed, the *Fuchilla* analysis, supplemented by consideration of the status of the entity under state law, would seemingly cover the three factors found dispositive by *Fitchik,* 873 F.2d at 659.

Nevertheless, *Fuchilla* is 26 years old. The law, and perhaps even the facts as to UMDNJ's status, have evolved. *Fuchilla* suggests, but does not firmly establish, that dismissal of these claims is appropriate. Based on the pleadings, however, I cannot perform anew the fact-intensive review that would be necessary to determine whether UMDNJ is an arm of the state. *See Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524, 546 (3d Cir. 2007). Subject to reconsideration after appropriate discovery, then, I will deny UMDNJ's motion to dismiss the Section 1983 and NJCRA claims in Counts 1-6.

One thing, however, is clear. UMDNJ *is* considered a state entity immune from liability under the TCA. *Lowe v. Zarghami,* 731 A.2d 14, 19 (N.J. 1999); *Tulli-Makowski v. Community Educ. Centers, Inc.,* Civ. No. 12-06091 (WJM) 2013 WL 1987219 *4 (D.N.J. May 13, 2013) (citing same and dismissing state law claims against UMDNJ). I will therefore grant the motion to dismiss the TCA claims (Counts 7-10) as against UMDNJ.

### (ii.)   *Individual Medical Defendants*

The status of the individual medical providers named in the SAC is also murky under Section 1983. The SAC does not specify whether it brings its claims against the individual Medical Defendants (Godinsky, Perera, Nendze, Delgado, Boblick, Picerno-Jones, Maxey, Kay, and Salem) in their official or individual capacities. The SAC also does not specify, for example, whether these medical professionals were actually employees of the DOC or Northern State Prison, or whether they were employees of UMDNJ who performed services at the prison under contract. SAC ¶¶ 16, 18. If the providers were state (or DOC) employees, any claims for damages against them in their official capacities would be barred under Section 1983. Claims brought against them in their personal capacities, however, would not be barred. *Hafer v. Melo,* 502 U.S. 21, 30-32, 112 S. Ct. 358, 116 L.Ed.2d 301 (1991) (state officials sued in their individual capacities are "persons" within the meaning of Section 1983).

At any rate, the allegations in the SAC are sufficient to support a claim that the medical providers responsible for Endl acted outside the scope of their

---

incorporated, whether it could enter into contracts and sue/be sued, and whether it was immune from state taxation. 415 F.2d at 250-51.

employment and would therefore be personally liable for damages under Section 1983. *See* SAC ¶¶ 22-23. Of course, I do not prejudge the merits. But pending some development of the record in discovery, the Section 1983 and NJCRA claims alleged in Counts 1-6 of the SAC cannot be dismissed on sovereign immunity grounds against the individual Medical Defendants

For purposes of the TCA, as noted above, there is no immunity shield for an employee who acted outside the scope of his employment, or where the actionable conduct constituted a crime, actual fraud, actual malice, or willful misconduct. N.J.S.A. 59:3-14. The SAC's claims under the TCA include a claim based on negligence or medical malpractice (Count 7). It also, however, alleges intentional conduct (Count 8 for IIED and Count 9 for wrongful death). Count 7, as I have said, could encompass willful conduct. Counts 8 and 9 allege intentional conduct, or conduct outside the scope of employment. The motion to dismiss Counts 7-10[8] as against the individual Medical Defendants is therefore denied.

In sum, the motion to dismiss the SAC on grounds of immunity from suit is denied for the most part as to the Medical Defendants. It is granted only as to Counts 7-10 with respect to UMDNJ.

## B. Failure to State a Claim

Defendants move to dismiss the complaint for failure to state a claim upon which relief can be granted. Motions to dismiss a complaint on this ground are considered under Fed. R. Civ. P. 12(b)(6). The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008) (established "reasonable inferences" principle not undermined by subsequent *Twombly* case).

Pursuant to Fed. R. Civ. P. 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." That rule does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement

---

[8]     As noted above, Count 10 does not really plead a separate cause of action, but purports to establish a basis for Plaintiff Susan Endl's standing as administrator ad prosequendum, pursuant to N.J.S.A. 2A:15-3, to assert the state law tort claims. In ruling either way on Count 10, I do not mean to imply that such standing is lacking. On the contrary, I have found such standing to be appropriate. *See* p. 6, *supra.*

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, stating a claim that is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

The SAC alleges (1) constitutional claims under Section 1983 and the NJCRA, and (2) tort claims under New Jersey law. All counts are brought against all Defendants. These two categories are considered separately.

### 1. Violations of 42 U.S.C. § 1983 and NJCRA (Counts 1 – 6)

The SAC alleges violations of Section 1983 and the NJCRA for (1) deliberate indifference to serious medical needs under the Fifth and Fourteenth Amendment (Count 1); cruel and unusual punishment under the Eighth Amendment and New Jersey Constitution (Counts 2 and 6); deprivation of "life, liberty, and the pursuit of happiness" under the Fifth and Fourteenth Amendment and New Jersey Constitution (Counts 3 and 5); and a "Monell Claim" based on the DOC's policies and customs (Count 4). SAC ¶¶ 28-42. As established above, sovereign immunity and the Eleventh Amendment require dismissal of Counts 1-6 on jurisdictional grounds as to the State actors. The analysis in this Section is therefore confined to the Medical Defendants.

#### a. Counts 1, 2 and 6

I first discuss Count 1 (deliberate indifference to serious medical needs under the Fifth and Fourteenth Amendments) and Counts 2 and 6 (cruel and unusual punishment under the Eighth Amendment and New Jersey Constitution Article I, § 12).

Counts 1 and 2 are asserted pursuant to Section 1983. To state a claim under Section 1983, a plaintiff must allege facts sufficient to show (1) a deprivation of a federal constitutional right or a federal statutory right, and (2) that the conduct at issue occurred "under color of law." *Parratt v. Taylor*, 451 U.S. 527 (1981); *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000).

To determine whether the SAC alleges a deprivation of a federal constitutional right, the Court must first "identify the exact contours of the underlying right said to have been violated" and second, determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini*, 212 F.3d at 806 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). Plaintiff's due process/deliberate indifference claim and Eighth Amendment/cruel and unusual punishment claim are both premised on the failure to afford adequate medical treatment. *See* SAC ¶¶ 29, 34. Failure to provide adequate medical care to inmates is cognizable as unconstitutional cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). Because Endl was incarcerated at the time of this alleged violation, the claim is most naturally analyzed under the Eighth Amendment.[9]

To establish such a claim, the plaintiff must show (1) deliberate indifference on the part of the prison officials and (2) that the prisoner's medical needs are serious. *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F. 326, 346 (3d Cir. 1987). A plaintiff can show deliberate indifference where knowledge of the need for medical care is accompanied by the intentional refusal to provide that care. *Id.* at 346 (citing *Ancata v. Prison Health Servs.*, 769 F.2d 700, 704 (11th Cir. 1985)). This prong can also be met when prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment. *Id.* at 347 (citing *Inmates of Allegheny Cnty. Jail*, 612 F.2d 754, 762 (3d. Cir. 1979)). The seriousness of the medical need can be measured by the effect of denying the particular treatment— "unnecessary and wanton infliction of pain," a life-long handicap, or permanent loss. *Id.* at 347 (citing *Estelle*, 429 U.S. at 103).

The SAC alleges that each of the individual Medical Defendants was "situate[d] at Northern State Prison" and was responsible for the care and treatment of the inmates at the prison, including Endl. SAC ¶¶ 15, 17. With the exception of naming Bernice Picerno-Jones, R.N., as the individual who first documented Endl's complaint of chest pain, the SAC does not specify which of the named Defendants were responsible for what treatment during the

---

[9]    This right is cognizable under the Eighth Amendment for inmates. It is cognizable as a due process claim under the Fourteenth Amendment for pre-trial detainees. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (applying similar standard). Thus the due process theory is probably redundant in this case, but I will not dismiss it on that basis at this time.

relevant time period.[10] *Id.* ¶ 23. Similarly, no specific knowledge or action is attributed to particular medical providers (again, other than Picerno-Jones). The SAC does allege generally, however, that Endl was misdiagnosed by his medical providers, that they failed to treat various ailments and symptoms, and that they failed to properly medicate him. *Id.* ¶ 23. Further, the SAC clearly alleges that the failure to render adequate medical care was connected to Endl's suffering and death. *See id.* ¶¶ 22-26.

As to acting "under color of law," the SAC alleges that the individual Medical Defendants were "authorized agents and/or representatives and/or employees" of UMDNJ and/or the DOC and/or Northern State prison. *Id.* ¶¶ 16, 18. There is a certain lack of clarity here, as the SAC fails to state whether any individual was technically employed by DOC or by the hospital. Those facts are, of course, within Defendants' control and may easily be established in the discovery process. In any event, the SAC does allege that all of the individually named medical providers physically worked on the premises of Northern State Prison. It alleges that UMDNJ contracted with New Jersey to provide "medical care and attention, and health and hospital services" to inmates at Northern State Prison. SAC ¶ 7. It alleges that these medical providers were "charged with the responsibility of providing medical care and attention to inmates at Northern State Prison," including Eli Endl. SAC ¶¶ 15-18. It alleges that Eli Endl required medical care from March 22, 2010 to March 25, 2010, was denied or deprived of the proper and necessary care and attention by those responsible for providing it, and as a result sustained significant pain and suffering and died. *Id.* ¶¶ 22-26. Under the circumstances, that is enough.

The SAC adequately alleges that, during the relevant period, the Medical Defendants caused a deprivation of constitutional rights while acting under color of state law. I will not, by dismissing claims, deny Plaintiff the opportunity to identify, through discovery, the role (if any) played by each individual Medical Defendant or to identify others involved in Eli Endl's medical care. Of course, should further information affect the alleged status of any of the named Medical Defendants, additional motion practice, including a motion for leave to amend the complaint, may be appropriate.

---

[10]     The named Defendants include Godinsky, Perera, Nendze, Delgado, Boblick, Picerno-Jones, Maxey, Kay, and Salem. SAC ¶¶ 15, 17.

I will therefore deny the motion to dismiss the Section 1983 claims asserted in Counts 1 and 2 as against the Medical Defendants.[11] As discussed above, the NJCRA hews closely to Section 1983; I will construe it in parallel fashion and deny the motion to dismiss Count 6 as well.

### b.  Counts 3, 5, and 4

Counts 3 and 5 state claims under the U.S. and State Constitutions for deprivation of "life, liberty and the pursuit of happiness."

As to Count 3, I observe that Section 1983 does not grant a cause of action for violations of the Declaration of Independence. True, aspects of life, liberty and the pursuit of happiness may be protected by the U.S. Constitution (*e.g.*, the Due Process clauses of the Fifth and Fourteenth Amendments or the Eighth Amendment). But there is no need to strain logic. Any such claim is already adequately covered by Counts 1, 2 and 6. I will dismiss Count 3 as superfluous.

Count 5 asserts a claim for deprivation of "life, liberty and the pursuit of happiness" under the New Jersey State Constitution. That at least has some textual basis:

> 1.    All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness.

N.J. Const. (1947) art. I, § 1. Like Count 3, Count 5 may turn out to be superfluous in light of other claims, but I will not dismiss it at the threshold.

Count 4 (*Monell* liability against DOC), as established above, must be dismissed on jurisdictional grounds under Rule 12(b)(1). (*See* p.8 & n.6, *supra*.) A prerequisite for *Monell* liability is that the defendant be a "person" for purposes of Section 1983, which DOC is not. To the extent this may be regarded as a failure to state a claim, dismissal would be appropriate under Rule 12(b)(6) as well.

---

[11]    In order for UMDNJ to be held liable, *respondeat superior* will not suffice. Plaintiff will have to show that there was a relevant UMDNJ policy or custom, and that the policy caused the constitutional violation alleged. *Natale*, 318 F.3d at 585 (citing *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

The motion to dismiss as it pertains to the Medical Defendants, then, then, is granted as to Counts 3 and 4, and denied as to Counts 1, 2, 5, and 6.

## 2. Malpractice & Negligence Claims

The remaining claims in the SAC consist of state law claims for medical malpractice (Count 7), IIED (Count 8), and wrongful death (Count 9). The SAC also pleads a separate count pursuant to the survivorship statute, N.J.S.A. 2A:15-3 (Count 10). As noted above, the survivorship statute does not create a separate cause of action, and there is no independent challenge to the appointment or standing of Susan Endl as administrator ad prosequendum under the statute. For present purposes, then, Count 10 stands or falls with the underlying causes of action. As discussed above, the State, DOC, and UMDNJ are immune from suit under the TCA. N.J.S.A. 59:2-1; N.J.S.A. 59:2-10; *Greenway Dev. Co., Inc. v. Borough of Paramus*, 750 A.2d 764, 767, 163 N.J. 546 (2000). The following discussion, then, is confined to Counts 7-9 as they apply to the individual Defendants.

### a. *Individual Corrections Defendants*

As a general matter, the individual Corrections Defendants could be subject to suit under Counts 7, 8, and 9. The facts alleged in the SAC, however, do not in any way implicate Defendants Lanigan, Hayman, or Lagana in Endl's medical treatment prior to his death. Nor does the SAC attribute any knowledge to them regarding those events. As to these three officers, then, the SAC does not allege facts sufficient to state a medical malpractice, wrongful death, or IIED claim under the TCA. Counts 7, 8 and 9 are therefore dismissed as against Defendants Lanigan, Hayman, and Lagana for failure to state a claim, pursuant to Rule 12(b)(6). Count 10, for the reasons stated in the preceding paragraph, is also dismissed as to these Defendants.

### b. *Individual Medical Defendants*

As to the Individual Medical Defendants, the SAC contains sufficient allegations to sustain the medical malpractice, IIED and wrongful death claims asserted in Counts 7, 8 and 9. As discussed above, the status and role (if any) of each individual Medical Defendant is not entirely clear, and it is not easy at present to discern whether the alleged conduct would best be characterized as negligent, reckless, or willful; development of the facts in discovery may therefore shed further light on the applicability of statutory immunity. At the motion to dismiss stage, however, the allegations linking the actions and inactions of these individual Medical Defendants with Endl's death make out

claims under the TCA. *See* SAC ¶¶ 22-23, 59-60. As discussed in more detail above, the individual medical providers were allegedly responsible for Endl's treatment and they allegedly failed to provide adequate medical care, resulting in Endl's severe emotional distress, pain, and suffering. SAC ¶¶ 25, 57.

The Medical Defendants also assert that dismissal of the medical malpractice claims is appropriate under Rule 12(b)(6) because Plaintiffs have failed to comply with New Jersey's Affidavit of Merit Statute. (Docket No. 48 at 4). New Jersey law requires that a plaintiff provide the defendant such an affidavit in actions of professional or medical malpractice or negligence. N.J.S.A. 2A:53A. The law provides in relevant part:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, *within 60 days following the date of filing of the answer to the complaint by the defendant*, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

> In the case of an action for medical malpractice, the person executing the affidavit shall meet the requirements of a person who provides expert testimony or executes an affidavit as set forth in section 7 of P.L.2004, c.17 (C.2A:53A-41). In all other cases, the person executing the affidavit shall be licensed in this or any other state; have particular expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years. The person shall have no financial interest in the outcome of the case under review, but this prohibition shall not exclude the person from being an expert witness in the case.

N.J.S.A. 2A:53A-27 (emphasis added). Under state practice, non-compliance with the statute is deemed a failure to state a cause of action. *Id.* at A-29.

The Affidavit of Merit statute was passed as part of a tort reform package designed to balance the competing policies of weeding out frivolous lawsuits early and ensuring that meritorious claims are heard. *Ferreira v. Rancocas Orthopedic Assocs.*, 836 A.2d 779, 782-83 (N.J. 2003). The statute was not intended to "create a minefield of hyper-technicalities in order to doom innocent litigants possessing meritorious claims." *Id.* at 783 (quoting *Mayfield v. Community Med. Assocs., P.A.*, 762 A.2d 237, 244 (N.J. Sup. Ct. App. Div. 2000)). I construe it in that spirit.

The Affidavit of Merit requirement does not dictate dismissal here. The time limits and requirements of the statute are triggered only by a defendant's filing of an answer to the complaint. *Id.* at A-27. Defendants have not answered the SAC, but have moved to dismiss it.

True, on August 14, 2012, the Medical Defendants filed an Answer to the First Amended Complaint. *See* Docket No. 13. The case, however, did not go forward based on the FAC; the screening function of the Affidavit of Merit was not implicated with respect to the FAC. Less than a month after the Medical Defendants answered the FAC, Plaintiffs moved again to amend the complaint. (Docket No. 14). Magistrate Judge Falk granted that motion, and on November 26, 2012, the Plaintiffs filed the Second Amended Complaint. *See* Docket Nos. 19, 20.

The apparent objective of having the Affidavit of Merit deadline run from the filing of an Answer is to ensure that motions to dismiss, if any, have been decided, the causes of action are settled, and any necessary discovery preliminary to the filing of the Affidavit can be noticed and taken. Defendants filed an Answer to the FAC, but Plaintiffs then quickly filed the SAC. In response to the SAC the Defendants did not answer, but filed comprehensive motions to dismiss. To treat the deadline for an Affidavit of Merit as running from the Answer to the FAC would be pointless. That is not the operative pleading. As to the Second Amended Complaint, the procedural posture of this

case is that no Answer has been filed. As to the SAC, the time limit to file an Affidavit of Merit has not begun to run.[12]

I will deny the motion to dismiss for failure to file an Affidavit of Merit.

In sum, the motion to dismiss Counts 7, 8, 9, and 10 is granted as to the individual Corrections Defendants but denied as to the individual Medical Defendants.

## III.   CONCLUSION

Defendants have moved to dismiss the Second Amended Complaint on grounds properly asserted under Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P. The SAC is dismissed in its entirety as to the Corrections Defendants, and dismissed in part as to the Medical Defendants.

Accordingly, for the reasons set forth in this Opinion the motions to dismiss the SAC (Dockets No. 34, 35, and 48) are:

1. **GRANTED** as to Counts 3 and 4 against all Defendants;
2. **GRANTED** as to Counts 1, 2, 5, 6, 7, 8, 9, and 10 against the state entity Corrections Defendants, New Jersey and the DOC;
3. **GRANTED** as to Counts 1, 2, 5, 6, 7, 8, 9, and 10 against the individual Corrections Defendants, Lanigan, Hayman, and Lagana, who were sued solely in their official capacities;
4. **GRANTED** as to Counts 7, 8, 9, and 10 against UMDNJ;
5. **DENIED** as to Counts 1, 2, 5, and 6 against UMDNJ; and

---

[12]   If Plaintiffs had permitted the FAC Affidavit of Merit deadline to run, and then attempted to resuscitate it by filing a new complaint, they might be viewed as trying to have it both ways. Here, though, Plaintiffs moved to amend the FAC within just 30 days of Defendants' answer to the FAC. When the motion to amend was granted, Plaintiffs filed the SAC within 104 days of Defendants' answer to the FAC. Both dates were well within the 120-day deadline for an Affidavit of Merit, assuming it was triggered by the Answer to the FAC. In short, Plaintiffs did not wait to see if Defendants challenged the lack of an Affidavit of Merit and then try to restart a deadline that had already expired.

Indeed, it may be the Medical Defendants who are trying to have it both ways here. Generally speaking, there are two procedural options: one must answer or move in response to a complaint. The Medical Defendants filed an Answer to the First Amended Complaint, but in response to the Second, they revived their option to move to dismiss. For purposes of the Affidavit of Merit deadline only, the Medical Defendants are relying on their Answer to the First Amended Complaint, even as they urge the Court to decide their "pre-answer" motion to dismiss as to the Second.

6. **DENIED** as to Counts 1, 2, 5, 6, 7, 8, 9, and 10 against the individual Medical Defendants, Godinsky, Perera, Nendze, Delgado, Boblick, Picerno-Jones, Maxey, Kay, and Anasuya.

Anthony Endl and Susan Endl, in her individual capacity only, are dismissed as plaintiffs in this matter for lack of standing. The action will go forward with Susan Endl, administrator ad prosequendum, as the plaintiff.

An Order will be entered in accordance with this Opinion.

**KEVIN MCNULTY**
**United States District Judge**

Dated: March 13, 2014